09 - 2101 - MK

# AFFIDAVIT OF ANDREW GREEN

## Introduction

Your affiant Andrew Green, being duly sworn and deposed, states as follows:

1. I am a Task Force Officer (hereinafter referred to as TFO) with the United States Drug Enforcement Administration (hereinafter "DEA"). As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) and empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. I have been employed as a law enforcement officer for the Franklin Police Department for the last seventeen years. I have been assigned to the Narcotics Unit of the Franklin Police Department for approximately seven years. Prior to that, I was assigned to the Street Narcotics Unit for three years. I am currently assigned to the Nashville District Office of the DEA, and have been for three years.

3. During my career in the Franklin Police Department and now as a TFO with the DEA, I have been involved in numerous investigations involving drug trafficking. I am responsible for investigating crimes that involve laundering of monetary instruments derived from the illicit sale of drugs, unlawful importation and exportation of illegal drugs, the possession with the intent to illegally distribute drugs, the distribution of drugs, as well as the use of communication facilities to further these offenses, in violation of Title 18, United States Code, Sections 1956 and 1957, and Title 21, United States Code, Sections 841(a)(1), 843(b), 846, 952(a), 960 and 963. In conducting these investigations, I have used a variety of investigative techniques and resources in several investigations which have included physical and electronic

1



surveillance, monitoring court-authorized wiretaps, managing the use of cooperating sources ("CSs") and informants, and securing other relevant information using other investigative techniques. Through these investigations, my training and experience and conversations with Special Agents as well as other law enforcement personnel, I have become familiar with methods used by drug traffickers to safeguard their drugs, to distribute drugs, and to collect and launder related drug proceeds.

4. I make this affidavit in support of an application for arrest warrants for **MAURICIO OROZCO-RIOS a/k/a CHAPULIN a/k/a FLACO a/k/a GUICHO** (hereinafter referred to as **"GUICHO"**), **FRANCISCO JORGE SEPULVEDA a/k/a GEORGE** (hereinafter referred to as **"GEORGE"**), **MARTIN MARTINEZ a/k/a MARTIN MARTINEZ-ALBEZ a/k/a JUVE** (hereinafter referred to as **"JUVE"**), **HUGO SEPULVEDA** (hereinafter referred to as **"HUGO"**), **MARCOS ARRIAZA RIOS** (hereinafter referred to as **"MARCOS"**), **SERGIO OROZCO-RIOS** (hereinafter referred to as **"SERGIO"**), and **LOURDES LILIANA RIOS** (hereinafter referred to as **"LOURDES"**) (hereinafter collectively referred to as "the Defendants"). This affidavit is submitted in support of a criminal complaint for the arrest of the Defendants because beginning not later than on or about October 2008, until on or about August 14, 2009, in the Middle District of Tennessee and elsewhere, they did combine, conspire, confederate, and agree with each other and with others known and unknown to unlawfully, knowingly, and intentionally possess with intent to distribute and to distribute 5 kilograms grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Section 846.

2

Case 3:09-cr-00186    Document 1    Filed 08/14/2009    Page 3 of 14
Case 3:09-cr-00186    Document 167-1    Filed 11/06/2009    Page 2 of 13

5. I make this affidavit, in part, on personal knowledge based on my participation in this investigation, and, in part, upon information and belief. I am familiar with the facts and circumstances of this matter. The sources of my information and belief include oral and written reports and information concerning this investigation which I have received from other law enforcement officers.

6. Except where otherwise noted, the information set forth in this affidavit has been provided to me directly or indirectly by Special Agents or TFOs of the DEA or other law enforcement officers (hereinafter collectively referred to as "Agents"). Unless otherwise noted, wherever I state that a statement was made, the information was provided by a law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read. All statements related herein, whether of law enforcement officers or not, are related in substance and in part, and are not verbatim unless otherwise indicated

7. This affidavit is being submitted for the limited purpose of establishing probable cause in obtaining arrest warrants. Therefore, I have not set forth each and every fact that I have learned during the course of this investigation.

## BACKGROUND OF THE INVESTIGATION

8. From July 2007 to December 2007, investigations conducted by DEA agents in Atlanta, Georgia identified several individuals responsible for the importation and distribution of hundreds of kilograms of cocaine into the United States, specifically, Atlanta, Georgia; Chicago, Illinois; Raleigh and Greensboro, North Carolina; New York, New York; and areas of south Florida. Federal search warrants were executed on December 6, 2007, resulting in the seizure of
3

5. I make this affidavit, in part, on personal knowledge based on my participation in this investigation, and, in part, upon information and belief. I am familiar with the facts and circumstances of this matter. The sources of my information and belief include oral and written reports and information concerning this investigation which I have received from other law enforcement officers.

6. Except where otherwise noted, the information set forth in this affidavit has been provided to me directly or indirectly by Special Agents or TFOs of the DEA or other law enforcement officers (hereinafter collectively referred to as "Agents"). Unless otherwise noted, wherever I state that a statement was made, the information was provided by a law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read. All statements related herein, whether of law enforcement officers or not, are related in substance and in part, and are not verbatim unless otherwise indicated

7. This affidavit is being submitted for the limited purpose of establishing probable cause in obtaining arrest warrants. Therefore, I have not set forth each and every fact that I have learned during the course of this investigation.

## BACKGROUND OF THE INVESTIGATION

8. From July 2007 to December 2007, investigations conducted by DEA agents in Atlanta, Georgia identified several individuals responsible for the importation and distribution of hundreds of kilograms of cocaine into the United States, specifically, Atlanta, Georgia; Chicago, Illinois; Raleigh and Greensboro, North Carolina; New York, New York; and areas of south Florida. Federal search warrants were executed on December 6, 2007, resulting in the seizure of

3

Case 3:09-cr-00186   Document 1   Filed 08/14/2009   Page 4 of 14
Case 3:09-cr-00186   Document 167-1   Filed 11/06/2009   Page 3 of 13

approximately $16,000,000, over 400 kilograms of cocaine, twenty pounds of crystal methamphetamine, thirty firearms, and the arrest of 36 individuals.

9. Agents received information shortly after December 2007 that co-conspirators of individuals who were arrested on December 6, 2007, were establishing a new drug organization in the Atlanta, Georgia area and other locations to replace the old ones. New conspirators were identified in North Carolina; Atlanta, Georgia; and Nashville, Tennessee. These individuals included, but were not limited to, **GUICHO** and **JUVE**.

10. Through Title III court-authorized interceptions of a telephone used by **JUVE**, Agents identified a Nashville, Tennessee area customer of **JUVE**, namely, **GUICHO**. **GUICHO** was intercepted speaking with **JUVE** utilizing a cellular telephone with telephone number (615) 613-6780, a Verizon cellular telephone subscribed to Ricardo Garcia at 510 Maxine Drive, Antioch, Tennessee 37013-4422 (hereinafter **TARGET TELEPHONE 1**).

11. On October 17, 2008, Judge Todd J. Campbell of the Middle District of Tennessee issued an order pursuant to Title III authorizing the interception of wire communications over **TARGET TELEPHONE 1**. Interceptions of **TARGET TELEPHONE 1** began on October 17, 2008. During the activation of **TARGET TELEPHONE 1**, Agents were notified that **GUICHO** had not made an outgoing call from **TARGET TELEPHONE 1** since October 9, 2008, and interceptions over **TARGET TELEPHONE 1** ended on October 26, 2008.

12. In October 2008, a review with Spanish-speaking monitors overseeing the Title III court-authorized interceptions over a telephone being used by **JUVE** revealed that **GUICHO** had recently been intercepted using a new telephone, a cellular telephone with telephone number

4

(615) 522-9504, a Sprint/Nextel cellular telephone subscribed to "Macario Leyva****"[1] at P.O. Box 54988, Irvine, California 92619-4988 (hereinafter **TARGET TELEPHONE 2**).

13. On October 31, 2008, Judge Todd J. Campbell of the Middle District of Tennessee issued an order pursuant to Title III authorizing the interception of wire communications over **TARGET TELEPHONE 2**. Interceptions of **TARGET TELEPHONE 2** began on November 3, 2008.

14. Between November 3, 2008 and November 26, 2008, Agents intercepted calls on **TARGET TELEPHONE 2** which Agents believed indicated that **GUICHO** and his co-conspirators were still involved in trafficking cocaine. On November 22, 2008, pursuant to intercepted calls regarding what Agents believed was **GUICHO** receiving cocaine from Atlanta, Agents conducted a search of his residence at 244 Haywood Lane, Nashville, Tennessee. The search yielded no drugs. However, **GUICHO**, his girlfriend, **LOURDES LILIANA RIOS**, and his brother, **SERGIO OROZCO RIOS**, were all present at **GUICHO's** residence and were identified at that time. Additionally, kilogram sized plastic wrappings that smelled of cocaine were recovered from the residence. Subsequent to the search of **GUICHO'S** residence, intercepted communications over **TARGET TELEPHONE 2** revealed that **GUICHO** felt that law enforcement was listening to his telephone calls. Agents were able to identify another cellular telephone that **GUICHO** activated over **TARGET TELEPHONE 2**, with telephone number (615) 818-2599, a Sprint/Nextel cellular telephone subscribed to Pedro Habiles at P.O.

---

[1] The named subscriber for **TARGET TELEPHONE 2** is "Macario Leyva****." The four asterisks are included in the subscriber's name as provided by Sprint/ Nextel. I do not have any information regarding an individual named "Macario Leyva." It has not been determined at this point in the investigation if "Macario Leyva" is an alias for **GUICHO** or a fictitious name.

5

Box 54966, Irvine, California 92619 (hereinafter referred to as **TARGET TELEPHONE 3**). **GUICHO** discontinued use of **TARGET TELEPHONE 2** after November 26, 2008.

15. On March 9, 2009, Judge Todd J. Campbell of the Middle District of Tennessee issued an order pursuant to Title III authorizing the interception of wire communications over **TARGET TELEPHONE 3**. Interceptions of **TARGET TELEPHONE 3** began on the same date.

16. Agents intercepted calls over **TARGET TELEPHONE 3** between March 9, 2009 and March 24, 2009. During that period, **GUICHO** communicated with several individuals Agents believed were conspiring with him to possess with the intent to distribute and to distribute cocaine, including **GEORGE** and **JUVE**. **GUICHO** discussed what Agents believed to be the distribution of cocaine and collection of drug proceeds with **GEORGE** and others, and what was believed to be the procurement and transportation of cocaine with **JUVE** and others. **GUICHO** also discussed obtaining a new telephone, even though there was no problem with his current phone, and exhorted several co-conspirators to do likewise.

17. **TARGET TELEPHONE 3** was intercepted from March 9, 2009 through March 23, 2009. During the period of interception of **TARGET TELEPHONE 3**, Agents were able to discern certain familial relations and calling patterns between **GUICHO** and other individuals. Through these associate phone numbers, Agents were able to identify **GUICHO's** new telephone number, a cellular telephone with telephone number (615) 724-8437, a Sprint/Nextel cellular telephone subscribed to Luis Macias222[2] at P.O. Box 54966, Irvine, California 92619, and used

---

[2] Luis Macias222 is the precise way the Subscriber name appears on the records furnished by Sprint.

6

by **GUICHO** (hereinafter referred to as **TARGET TELEPHONE 4**).

18. On May 11, 2009, Judge Todd J. Campbell of the Middle District of Tennessee issued an order pursuant to Title III authorizing the interception of wire communications over **TARGET TELEPHONE 4**. Interceptions of **TARGET TELEPHONE 4** began on May 12, 2009 and continued through June 10, 2009.

19. On June 10, 2009, Judge Todd J. Campbell of the Middle District of Tennessee issued an order pursuant to Title III authorizing the continued interception of wire communications over **TARGET TELEPHONE 4**. Interceptions began on June 11, 2009 and continued through July 10, 2009.

20. During the interception of **TARGET TELEPHONE 4** from June 10, 2009 through July 10, 2009, **GUICHO** engaged in what Agents believed were numerous drug conversations with multiple members of his organization. These conversations included what Agents believed was the status of different cocaine customers, the repayment of drug debts, and the planning and execution of a purchase of five kilograms of cocaine from an unidentified source of supply in Atlanta, Georgia. In addition to conversations pertaining directly to the sale of cocaine and marijuana, **GUICHO** engaged in several conversations describing different aspects of what Agents believe was money laundering.

21. On July 16, 2009, Judge Todd J. Campbell of the Middle District of Tennessee issued an order pursuant to Title III authorizing the continued interception of wire communications over **TARGET TELEPHONE 4**. Interceptions continued through today, August 14, 2009. Hereinafter, **TARGET TELEPHONES 1** through **4** will be collectively referred to as "the Target Telephones."

7

Case 3:09-cr-00186   Document 1   Filed 08/14/2009   Page 8 of 14
Case 3:09-cr-00186   Document 167-1   Filed 11/06/2009   Page 7 of 13

### Intercepted Calls Over Target Telephone 4 on August 13, 2009 Regarding MARCOS Going To Atlanta To Pick Up Cocaine From JUVE for GUICHO

22. On August 13, 2009, intercepted calls over **TARGET TELEPHONE 4** indicated that **GUICHO** was going to send **MARCOS** to Atlanta, Georgia to pick up what Agents believed was ten kilograms of cocaine. Specifically, **JUVE** told **GUICHO** that there would be "ten gallons of gas" in a car in Atlanta. Agents believed that this was a reference to ten kilograms of cocaine that would be placed in a vehicle. During an intercepted call over **TARGET TELEPHONE 4** at approximately 6:48 p.m. EST, **JUVE** told **GUICHO** that "they're going to put 'ten dollars' of gas in the vehicle to see if we can 'work' the whole week." Based upon my training and experience and investigation into this case, I believe that the reference to "ten dollars" meant ten kilograms of cocaine and "work" meant to sell cocaine. In my experience, when used in this context, the term "work" is commonly used by drug traffickers to mean distributing drugs.

23. At approximately 7:05 p.m. EST, **GUICHO** was intercepted over **TARGET TELEPHONE 4** speaking with **JUVE** again. **GUICHO** said that **MARCOS** "wants to leave over there right now. How should we do it? He wants to go there now and come back soon." Later in the call, **JUVE** asked **GUICHO**, "Did you figure out at what time we're heading back?" Based upon my training and experience and investigation in this case, they were discussing **MARCOS** going to Atlanta to get **JUVE** and bring him and cocaine back to Nashville. There were several more intercepted calls that evening between **GUICHO** and **JUVE** discussing **MARCOS** meeting with **JUVE**.

24. At approximately 11:08 p.m. EST, **GUICHO** and **GEORGE** were intercepted

8

over **TARGET TELEPHONE 4**. **GUICHO** told **GEORGE** that he had sent **MARCOS** "over there" (which I believe referred to Atlanta) and that "they might get here early" and asked **GEORGE** if it would be okay "for us to go to your house?" **GEORGE** replied, "To drop off the car?" **GUICHO** replied, "Yes, because since 'they' were over here." **GEORGE** told **GUICHO** to tell **MARCOS** to park the car on the lawn.

### JUVE and MARCOS Drop Off A Car With Nine Kilograms of Cocaine at GEORGE and HUGO's Residence

25. On August 14, 2009, **JUVE** and **MARCOS** arrived in Nashville at approximately 5:30 a.m. and drove to the residence of **GEORGE** and **HUGO** (who are brothers), located at 3741 East Ridge Drive, Nashville, Tennessee. Agents had been performing surveillance on the residence prior to their arrival. **JUVE** and **MARCOS** were driving a Toyota Camry with Georgia license plates. Agents had previously performed surveillance on that Toyota Camry on two prior occasions in June and July of 2009 when it was driven by other members of the conspiracy to Atlanta and back to Nashville. Based upon intercepted calls around the time of that surveillance, Agents believed that the Camry had a hidden compartment that was used to hide money and cocaine.

26. Upon their arrival at **GEORGE** and **HUGO's** residence, **JUVE** went inside the residence and **MARCOS** began walking away from the residence upon his observing numerous Agents in marked patrol units and other unmarked vehicles rapidly approaching the residence.

27. Agents took **JUVE** and **MARCOS** into custody. **JUVE** gave Agents written consent to search the Camry. Additionally, a drug detection dog from the Metropolitan Nashville Police Department who was present at the scene also indicted to the presence of narcotics inside

9

Case 3:09-cr-00186   Document 1   Filed 08/14/2009   Page 10 of 14
Case 3:09-cr-00186   Document 167-1   Filed 11/06/2009   Page 9 of 13

the vehicle. Agents further searched the vehicle and ultimately discovered hidden compartments in the vehicle which contained nine similarly wrapped packages, each of which were the size of a kilogram of cocaine. The substance inside one of the nine packages was field-tested and tested positive for the presence of cocaine.

28. The owners of the residence (**GEORGE** and **HUGO**'s parents) gave written consent for Agents to search the residence. Upon searching the residence, Agents found what appeared to be drug ledgers, and an unused plastic heat-seal bag in **GEORGE**'s room. Agents found a loaded pistol, a money counter, and plastic shrinkwrap in **HUGO**'s room. Agents also found cellular telephones that had been intercepted over **TARGET TELEPHONE 4** inside the residence. **GEORGE** and **HUGO** were then also taken into custody.

**Consensual Search of GUICHO, SERGIO and LOURDES' Residence**

29. **GUICHO**, his brother **SERGIO**, and **GUICHO**'s girlfriend, **LOURDES**, reside at 244 Haywood Lane, Nashville, Tennessee. After taking **GEORGE**, **HUGO**, **JUVE**, and **MARCOS** into custody, Agents then went to **GUICHO**'s residence and announced their presence via a loudspeaker. **GUICHO**, **SERGIO** and **LOURDES**' residence is only a short distance from **GEORGE** and **HUGO**'s residence.

30. **GUICHO** came to the front door and was taken into custody. **SERGIO** and **LOURDES** were also present at the residence. Agents received written consent from **GUICHO** to search his residence. As noted above, **GUICHO** had previously given consent to Agents to search his residence in November 2008. While searching the residence, Agents discovered approximately 50 pounds of marijuana in the basement. Agents also found several loaded handguns and two bulletproof vests in the residence.

10

Case 3:09-cr-00186 Document 1 Filed 08/14/2009 Page 11 of 14
Case 3:09-cr-00186 Document 167-1 Filed 11/06/2009 Page 10 of 13

## Summary of Content of Intercepted Calls over the Four Target Telephones

31. Prior to August 13, 2009, all of the Defendants were intercepted over the Target Telephones. Since October 2008 through August 14, 2009, **GUICHO** was the primary user of the Target Telephones. Each of the remaining Defendants were intercepted having conversations with **GUCIHO** regarding what I believe, based upon my training and experience, and investigation in this case, to be the possession and distribution of kilograms of cocaine in the Middle District of Tennessee.

32. Based upon my training and experience, the content of intercepted calls over the Target Telephones, surveillance performed as a result of the intercepted calls, and the seizure of nine kilograms of cocaine and other evidence on August 14, 2009, I believe the following regarding each of the Defendants and their respective roles in the conspiracy: 1) **GUICHO** is the head of a cell of a larger cocaine trafficking conspiracy that is based in Nashville, Tennessee. Members of that cell conspire to and do distribute multi- kilograms of cocaine in the Nashville area at **GUICHO's** direction. He is responsible for obtaining cocaine, distributing it in Nashville, and paying his sources of supply for that cocaine. 2) **GEORGE** works for **GUICHO** and has been intercepted on calls discussing what I believe to be the distribution of cocaine and the collection of payments for that cocaine with **GUICHO** in the Nashville area. Based upon the intercepted calls, I believe that **GEORGE** is **GUICHO's** "right hand man." 3) **JUVE** is one of **GUICHO's** sources of supply for cocaine and primarily resides in Atlanta. **JUVE** has been intercepted on calls where he and **GUICHO** were discussing what I believe to be the importation of multi-kilograms of cocaine from Mexico, the transportation of it to Nashville via Atlanta, and the collection and payment of money for that cocaine. 4) **LOURDES** is **GUICHO's** girlfriend

11

and resides with him at his residence. **LOURDES** has been intercepted discussing how she had received a payment from one of **GUICHO**'s customers at their residence. Based on other calls, I believe that she has also brought what I believe to be cocaine to El Coyote, a club **GUICHO** owns and works at, at **GUICHO**'s direction. 5) **HUGO** is **GEORGE**'s brother and also works with **GUICHO**. Based upon intercepted conversations he and **GEORGE** have had with **GUICHO**, I believe **HUGO** distributes cocaine to **GUICHO**'s customers. 6) **MARCOS** also works with **GUICHO** and, based upon intercepted conversations he has had with **GUICHO**, I believe he transports cocaine from Atlanta to Nashville and distributes cocaine to **GUICHO**'s customers. 7) Finally, **SERGIO** is **GUICHO**'s brother and resides with him and **LOURDES**. Based upon intercepted conversations he has had with **GUICHO**, I believe he distributes cocaine to **GUICHO**'s customers. I also believe **SERGIO** manages one of the "stash house" that the organization uses. Based upon other intercepted calls, I believe that **SERGIO** assisted **GUICHO** in unloading what I believe to be cocaine from a vehicle that Agents had performed surveillance on as it traveled from Nashville to Atlanta and back to Nashville.

## CONCLUSION

33. Based upon the facts stated above, I believe there is probable cause to believe that beginning not later than October 2008, until on or about August 14, 2009, in the Middle District of Tennessee and elsewhere, the Defendants did combine, conspire, confederate, and agree with each other and with others known and unknown to unlawfully, knowingly, and intentionally possess with intent to distribute and to distribute 5 kilograms grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in

12

Case 3:09-cr-00186    Document 1    Filed 08/14/2009    Page 13 of 14
Case 3:09-cr-00186    Document 167-1    Filed 11/06/2009    Page 12 of 13

violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Section 846.

Based upon the facts stated above, I respectfully request this Court issue arrest warrants for the Defendants.

Due to the disclosure of the existence of the Title III wires and the content of intercepted calls, none of which have previously been disclosed, I ask that this Court place this Affidavit and the Complaint under seal under further order by this Court.

Further affiant sayeth not.

Andrew Green
Task Force Officer
Drug Enforcement Administration

Sworn to before me this 14th day of August, 2009.

E. CLIFTON KNOWLES
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF TENNESSEE

13

Case 3:09-cr-00186   Document 1   Filed 08/14/2009   Page 14 of 14
Case 3:09-cr-00186   Document 167-1   Filed 11/06/2009   Page 13 of 13